UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x
KYEONGMIN AN A/K/A CATHERINE AN,

                             Plaintiff,                         **COMPLAINT**

                    - against -                        **JURY TRIAL**
                                                      **DEMANDED**

**EDWARD FITZGERALD A/K/A TED FITZGERALD,**
**APFS, LLC D/B/A ADDISON GROUP AND,**        **Case No.**
**ODYSSEY INVESTMENT PARTNERS LLC,**

                           **Defendants.**
--------------------------------------------------------------------------------x

      Plaintiff **KYEONGMIN AN a/k/a CATHERINE AN** ("Plaintiff") by her attorneys, Law Offices of Arnold N. Kriss, complaining of Defendants **EDWARD FITZGERALD a/k/a TED FITZGERALD** (Defendant "Fitzgerald") and **APFS, LLC D/B/A ADDISON GROUP** (Defendant "Addison") Defendant **ODYSSEY INVESTMENT PARTNERS LLC** (Defendant "Odyssey") or collectively ("Defendants") respectfully alleges upon information and belief:

**THE PARTIES**

      1.     Plaintiff is an individual citizen located in the State of New York, County of Nassau.

      2.     Since 2011, Defendant Fitzgerald is a Senior Vice President employed by Defendant Addison at its regional New York Office ("New York Office") located at 462 7th Avenue, 19th Floor, New York, New York 10018.  (Exhibit X).  Furthermore, Defendant Fitzgerald is a citizen of the State of New Jersey.

      3.     Defendant Addison is a Delaware limited liability company with its principal corporate office located at 125 S. Wacker Drive, Suite 2700, Chicago, Illinois 60606, employing over 1000 employees.

      4.     According to Defendant Addison's website, "The New York office for Addison Group is a staffing agency specializing in consulting, staffing, and executive search services for

Finance & Accounting, Information Technology, Human Resources, and Administrative verticals." https://addisongroup.com/locations/location/new-york/.

5.      Defendant Odyssey is a Delaware limited liability company with its corporate offices located at 21650 Oxnard Street, Suite 1650, Woodland Hills, CA 91367 and 590 Madison Avenue, 39th Floor, New York, NY 10022.

6.      On or about December 19, 2016, prior to acts charged hereinafter, Defendant Odyssey acquired an interest in Defendant Addison.

### JURISDICTION AND VENUE

7.      This Court's jurisdiction arises under *28 U.S.C. § 1332(2), Diversity of citizenship; amount in controversy; costs*. All named parties meet the diversity jurisdiction of this Court.

8.      This Court's jurisdiction is also pursuant to *28 U.S.C. § 1332(b),* since Plaintiff's damages are greater than Seventy Five Thousand ($75,000.00) Dollars.

9.      The United States District Court, Southern District of New York is the proper venue for this action as the causes of action also arose from Defendants' conduct within the jurisdiction of this Court.

### DEFENDANT FITZGERALD'S UNWELCOME, HARASSING AND PREDATORY CONDUCT OF A SEXUAL NATURE OF PLAINTIFF

10.      On September 6, 2017, Plaintiff, a woman, age 24, was hired by Defendants as a Business Development Manager at Defendant Addison's New York Office.

11.      Defendant Fitzgerald was Plaintiff's direct supervisor at Defendant Addison's New York Office.

12.      Immediately after Plaintiff's hiring, Defendant Fitzgerald, an older, married man, engaged in unwelcome, harassing and predatory conduct of a sexual nature of Plaintiff.

13.     During the hiring process, Defendant Fitzgerald informed Plaintiff that Plaintiff would have to sit next to Defendant Fitzgerald for Plaintiff's training.

14.     Defendant Fitzgerald further stated after Plaintiff's training Plaintiff would be seated together with the other Defendant Addison's sale representatives.

15.     In September 2017, Plaintiff, as a Defendant Addison employee, was informed by a female Defendant Addison co-worker that attendance at an after work employee social get together was considered a mandatory Defendant Addison function.

16.     In September 2017, at an after work employee social get together, Defendant Fitzgerald was present with Plaintiff and other Defendant Addison employees.

17.     Defendant Fitzgerald in a conversation with Plaintiff inappropriately, intentionally and willfully discussed his sex life with Plaintiff and other Defendant Addison's employees.

18.     In September and October of 2017, Defendant Fitzgerald following up his sex life conversation sent Plaintiff text messages with emojis containing sexual comments referring to Plaintiff's body and clothing. (Exhibits A-J).

19.     In the emails, Defendant Fitzgerald requested Plaintiff send him pictures of Plaintiff's body and Plaintiff's tattoos.  (Exhibits F, H & J).

20.     Defendant Fitzgerald's inappropriate texts to Plaintiff were:

    a.     On September 29, 2017, at 7:18 p.m., Defendant Fitzgerald set one of Plaintiff's work goals as Plaintiff's "admission of tiger tattoo location."  (Exhibit A).

    b.     On September 30, 2017, at 11:40 a.m., Defendant Fitzgerald stated, "Lol. And I just realize that I have now discovered the identity of yet another tattoo on you, which is funny because it was a buffalo and not a tiger, but you did say tiger, so I'm not losing my mind! You are definitely an interesting site in a bikini. Lol."   (Exhibit B).

c.      On October 3, 2017, at 5:21 p.m., Defendant Fitzgerald sent Plaintiff a text telling her to go to a store to pick up something, allegedly for a client, and instructing Plaintiff, "Don't share why with the others, just say you have to leave a little early."  (Exhibit C). When Plaintiff arrived at the store she learned Defendant Fitzgerald bought Plaintiff flowers.

d.      On October 4, 2017, at 12:26 p.m., Defendant Fitzgerald sent Plaintiff a text, "Is it true you threw out the flowers? Someone said they saw you throwing flowers out last night, 😖."  (Exhibit D).

e.      On or about September 30, 2017, in the evening hours, Defendant Fitzgerald sent Plaintiff a modeling picture of himself when he was younger and nude except for a small cloth covering his genitals.  (Exhibit E).

f.      On October 6, 2017, at 4:52 p.m., Defendant Fitzgerald sent Plaintiff a text message that Defendant's photo was sent to Plaintiff in exchange for a "bikini shot," of Plaintiff stating, "Just remembered…I sent my risqué photo in exchange for the rose tattoo photo…bikini shot…  I think you owe me one 😡."  On October 6, 2017, at 9:25 p.m., Plaintiff responded, "Lol no way."  (Exhibit F).

g.      On October 12, 2017, at or about 7:30 p.m., Defendant Fitzgerald sent Plaintiff a text message stating, that he (Defendant Fitzgerald) went to Barnes & Noble, a book store, and looked at a magazine where Plaintiff allegedly appeared on the cover.  (Exhibits F, G & H).

h.      Also, on October 12, 2017, at 10:54 p.m., Defendant Fitzgerald told Plaintiff, "By the way, the fishnets might not make the client visit attire 😳."  (Exhibit G).

i.      On October 13, 2017, at 7:35 a.m., Plaintiff responded to Defendant Fitzgerald, "Y would I be wearing a fishnet lol what r u talking about."  (Exhibit G).

j.        On October 20, 2017, at 5:43 p.m., Defendant Fitzgerald sent Plaintiff a 😎 emoji and texts about Plaintiff's "outfit," stating Plaintiff's "outfit was hot" and her boots, "Should have worn those boots in your shoot!".  (Exhibit I).

k.        On October 20, 2017, at 5:50 p.m., Defendant Fitzgerald followed up with another text message "Today's were way sexier.  But for the record I did not notice them 👀."  (Exhibit I).  Plaintiff responded on October 20, 2017 at 5:56 p.m., "Hahah omg stop".

l.        On October 25, 2017, at 8:04 p.m., Defendant Fitzgerald texted Plaintiff, "I think I'll bring in pix I shared with you for my baby photo…You can bring in the pix of you on the bike with your butt leading the way!".  (Exhibit J).

m.        On October 25, 2017, at 8:30 p.m., when Plaintiff did not respond, Defendant Fitzgerald sent another text message, "No Comment eh?".  (Exhibit J).

n.        On October 25, 2017, at 8:32 p.m., Plaintiff responded, "What do you mean my butt leading the way…lol".  (Exhibit J).

o.        On October 25, 2017, at 8:34 p.m., Defendant Fitzgerald responded to Plaintiff's 8:32 p.m. text, "Uhhhhhh!!! You know which one" and then he texted again, "Omfg[1]👀🙀".  (Exhibit J).

p.        On October 25, 2017, at 8:36 p.m., Plaintiff responded, "What? At 8:37 p.m., Plaintiff further responded, "I'm so confused".  (Exhibit J).

q.        Defendant Fitzgerald's inappropriate language, pictures, emojis and content contained in the above text messages originating from Defendant Addison's supervisor subjected Plaintiff to Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature surpassing all bounds of decency.

---

[1]        "Omfg", translating to, "Oh My Fucking God."

21.     While sending Plaintiff unwarranted, inappropriate and impermissible text messages, Defendant Fitzgerald, as Plaintiff's supervisor, exercised supervisory control over Plaintiff.  (Exhibits A-J).

22.     Defendant Fitzgerald used a cellular telephone to send inappropriate text messages to Plaintiff.  (Exhibits A-J).

23.     Defendant Fitzgerald's cellular telephone was provided by Defendant Addison.

24.     Defendant Fitzgerald used Defendant Addison's computer server's assigned Defendant Addison email address to Defendant Fitzgerald from which Defendant Fitzgerald sent inappropriate emails to Plaintiff.  (Exhibit Q).

25.     During Plaintiff's Defendant Addison's employment, Defendant Fitzgerald exhibited his unwelcome, harassing and predatory conduct of a sexual nature by requiring Plaintiff to be continuously seated next to him (Defendant Fitzgerald) as "training."

26.     It was Defendant Fitzgerald's intent to engage in a course of conduct of unwelcome, harassing and predatory conduct of a sexual nature of Plaintiff.

27.     Defendant Fitzgerald's "training" of Plaintiff keeping Plaintiff close to Defendant Fitzgerald served no legitimate business purpose.

28.     Defendant Fitzgerald's purpose of keeping Plaintiff seated close to Defendant Fitzgerald was in furtherance of Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature of Plaintiff.

29.     Defendant Addison's co-workers were aware of Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature of Plaintiff.

30.     Plaintiff was informed by another Defendant Addison employee that Defendant Fitzgerald "had a thing for Asians," specifically Asian women.

31.     Plaintiff is Asian-Pacific of Korean heritage.

32.     On October 31, 2017, at about 6:00 p.m., Plaintiff returned to her New York Office desk, when Plaintiff observed Defendant Fitzgerald going through Plaintiff's personal bag which was under Plaintiff's desk.

33.     Plaintiff's bag contained Plaintiff's bra and underwear.

34.     When Defendant Fitzgerald made eye contact with Plaintiff, Defendant Fitzgerald immediately kicked Plaintiff's bag under Plaintiff's desk.

35.     When Plaintiff opened her bag, Plaintiff found that her bra and underwear were visible as opposed to where Plaintiff had previously placed them before Defendant Fitzgerald went through Plaintiff' bag.  (Exhibit M).

**PLAINTIFF REPORTED DEFENDANT FITZGERALD'S
UNWELCOME, HARASSING AND PREDATORY
CONDUCT OF A SEXUAL NATURE
TO DEFENDANT ADDISON'S HUMAN
RESOURCES DEPARTMENT**

36.     During Plaintiff's Defendant Addison's employment, Defendants supervised and controlled Plaintiff's employment conditions.

37.     During Plaintiff's employment, Defendant Addison maintained a Human Resources Department ("HRD").

38.     During Plaintiff's employment, Defendant Addison's Internal Employee Handbook ("Handbook") stated:

> "Sexual and Unlawful Harassment:
>
> Addison Group is committed to providing a work environment that is free of discrimination and unlawful harassment. Actions, words, jokes or comments based on an individual's sex, race, ethnicity, age, religion, or any other legally protected characteristics will not be tolerated…As an example, sexual harassment (both overt and subtle) is a form of employee misconduct that is demeaning to another person, undermines the integrity of the employment relationship, and is strictly prohibited.
>
> Any employee, who wants to report an incident of sexual or other unlawful harassment should promptly report the matter to his or

7

supervisor, or to Human Resources…Employees can raise concerns and make reports without fear of reprisal.

Anyone engaging in sexual or other unlawful harassment will be subject to disciplinary action, up to and including termination of employment." (Exhibit K).

39. During Plaintiff's employment, Defendant Addison's Employment Application also contained a Harassment Policy ("Policy"):

"VIOLATION OF THIS POLICY PROHIBITING HARASSMENT WHICH AFFECTS THE WORKPLACE WILL SUBJECT AN EMPLOYEE TO DISCIPLINARY ACTION UP TO AND INCLUDING IMMEDIATE TERMINATION…

'Harassment' includes, but is not limited to verbal, graphic, or physical conduct relating to an individual's race, color, gender, sexual preference, religion, national origin, citizenship, age or disability.

'Sexual Harassment' in specific may take a number of forms all of which are prohibited by this policy. Sexual harassment may include, but is in no way limited to the following:

Unwelcome sexual flirtations, sexual advances or propositions, requests for sexual favors, unwelcome or offensive touching, explicit, degrading or demeaning comments about another individual or his/her appearance, the display of sexually suggestive pictures or objects, telling suggestive jokes or making sexually suggestive comments or gestures or other offensive verbal graphic or physical conduct of as sexual nature. Taking or the refusal to take any personal action based on an employee's submission to or refusal of sexual overtures...

Immediately notify your supervisor at Addison Group or Human Resources if you cannot go to your supervisor." (Exhibit L).

40. On November 10, 2017, at 11:15 a.m., in accordance with Defendant Addison's Handbook and Policy, Plaintiff reported Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature of Plaintiff in an email to Betsy Tien, ("Ms. Tien") Defendant Addison's HRD Director. (Exhibit M).

41.    Plaintiff's November 10, 2017, 11:15 a.m., email to Ms. Tien stated:

"Hi Betsey,

My name is Catherine An from Administrative and HR division in NY.  I started at Addison Group on early September.

I want to bring up this issue to your attention regarding my boss, Ted Fitzgerald. Along with number of comments which I found inappropriate coming from my boss there was an incident on October 31st after office hour.  I was waiting at the office for my friend to get to the city so there no one there except for Nakia Cole and Ted.  Nakia stepped out of the office to get her wallet from her friend and I went to the conference room to have a brief call with my friend.  As I walked back to my desk through the small conference room which is right behind my desk and Ted's, I saw him crouching down by my desk looking through my bag which contained my clothes, bra, and underwear I brought to work for the weekend. I noticed that my intimates were at the top of the bag when it was hidden out of sight before. He quickly kicked the bag to where it was and we had awkward 3 seconds of silence. I didn't know what to say at the moment since the situation was already uncomfortable enough-I didn't have the courage to say 'what are you doing'.

Prior to that, Ted used to text me during the weekend. At first I responded back to him even when I thought it was odd – I wanted to be on his good side since I was grateful that he believed in me and gave me a big opportunity.  However I began ignoring his texts when I thought it was getting inappropriate.  He eventually stopped but he still text me after work about….work. He has been very attentive with my training which is necessary but now I think it's getting to the point where my colleagues could think otherwise.

I would love to talk to you in more detail on Monday since I am not in the office today. I have a long thread of inappropriate text messages that I'd like to share with you as well."  (Exhibit M).

42.    On November 10, 2017, at 1:53 p.m., Plaintiff also notified Ms. Tien:

"Thank you so much for getting back to me. Actually, I'd like to briefly talk to you today before I get to work on Monday since I probably would feel really uncomfortable walking into the office.

"Is there a way you can speak to me for a few minutes?" (Exhibit M).

43.    On November 10, 2017, at 4:22 p.m., Ms. Tien e-mailed Plaintiff, "Unfortunately, I'm booked for the rest of today."   (Exhibit M).

44.    On or about November 13 and 15, 2017, ("November 2017 calls"), Plaintiff telephoned Ms. Tien informing Ms. Tien of Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature of Plaintiff.  (Exhibit Y).[2]

45.    On November 13, 2017, at 8:31 a.m. and 8:35 a.m., Plaintiff sent Ms. Tien emails including screen shots of Defendant Fitzgerald's text messages and photographs to Plaintiff. (Exhibits N and Y).

46.    During her conversation with Plaintiff on November 13, 2017, telephone call, Ms. Tien stated to Plaintiff that she (Ms. Tien) had to speak to Defendant Fitzgerald and "hear his side of the story".  (Exhibit Y).

47.    After speaking with Defendant Fitzgerald and during Plaintiff's November 2017 calls with Ms. Tien, Ms. Tien accused Plaintiff of flirting with Defendant Fitzgerald.  (Exhibit Y).

48.    During Plaintiff's November 2017 calls, Ms. Tien victimized Plaintiff telling Plaintiff she was "at fault" concerning Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature of Plaintiff.  (Exhibit Y).

49.    During Plaintiff's November 2017 calls, Ms. Tien advised Plaintiff not to wear skirts that could ride up baring her legs when Plaintiff sat down.  (Exhibit Y).

50.    During Plaintiff's November 2017 calls with Ms. Tien, Plaintiff requested Ms. Tien to separate Plaintiff from Defendant Fitzgerald by moving her chair away from Defendant Fitzgerald.  (Exhibit Y).

---

[2]    Attached as Exhibit Y are two transcripts of telephone calls between Plaintiff and Ms. Tien.  Copies of the transcripts and the actual recordings of the telephone calls were previously provided to Counsel for Defendants Fitzgerald and Addison.

51.     Ms. Tien asked Plaintiff, "What do you want?" and she responded, "I want my seat moved away from (Defendant Fitzgerald)."  (Exhibit Y).

52.     During the November 2017 calls, Ms. Tien further informed Plaintiff that, Edward Kavanagh, ("Mr. Kavanagh") President, Defendant Addison's Administrative Division and Defendant Fitzgerald's supervisor, was informed of Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature of Plaintiff.  (Exhibit Y).

53.     During Plaintiff's November 2017 calls, Ms. Tien informed Plaintiff that Defendant Fitzgerald had apologized to her (Ms. Tien) for his misconduct.  (Exhibit Y).

54.     Ms. Tien informed Plaintiff that Defendant Fitzgerald would apologize to Plaintiff for his unwelcome, harassing and predatory conduct of a sexual nature of Plaintiff.  (Exhibit Y).

55.     During Plaintiff's November 2017 calls, Ms. Tien assured Plaintiff that her chair at the New York Office would be moved away from Defendant Fitzgerald that week.  (Exhibit Y).

56.      During a November 15, 2017, call, Ms. Tien, in an accusatory and condescending tone, asked Plaintiff, "Who have you been speaking to?" about Defendant Fitzgerald.

57.     During the November 15, 2017, call, Ms. Tien informed Plaintiff that someone had "anonymously" called Ms. Tien to report, "(Plaintiff) was speaking to others" about Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature of Plaintiff.

58.     Plaintiff denied to Ms. Tien speaking to anyone about Defendant Fitzgerald's misconduct after Plaintiff's telephone calls with Ms. Tien.

59.     During Plaintiff's November 2017 calls, Ms. Tien again victimized Plaintiff. (Exhibit Y).

60.     Ms. Tien attempted to convince Plaintiff it was Plaintiff who was the one, not Defendant Fitzgerald, who did something wrong.  (Exhibit Y).

61.     During Plaintiff's November 2017 calls, Ms. Tien tried to manipulate Plaintiff to feel responsible for Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature of Plaintiff.  (Exhibit Y).

## DEFENDANT ADDISON'S FAILURE TO TAKE ANY
## ACTION AGAINST DEFENDANT FITZGERALD

62.     After reporting Defendant Fitzgerald's actions to Ms. Tien in e-mails on November 10 and 13, 2017, and during the November calls, Ms. Tien, Mr. Kavanagh and other supervisors and managers at Defendant Addison failed to conduct a proper investigation of Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature of Plaintiff by Defendant Fitzgerald.  (Exhibits N and Y).

63.     After Plaintiff reported Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature to Ms. Tien on November 10, 13 and 15, 2017, in both e-mails and telephone calls, Ms. Tien did not properly investigate Plaintiff's complaints concerning Defendant Fitzgerald.  (Exhibits N and Y).

64.     After Plaintiff reported to Ms. Tien Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature, Defendant Fitzgerald was never disciplined pursuant to Defendant Addison's Policy.

65.     Plaintiff's chair in the New York Office was never moved away from Defendant Fitzgerald as promised by Ms. Tien.

66.     On January 3, 2018, at 7:34 a.m., Plaintiff e-mailed Ms. Tien stating, "…it seems like this has now been buried like nothing happened."  (Exhibit O).

67.     Defendant Addison's HRD, including Ms. Tien, by failing to investigate and take disciplinary action against Defendant Fitzgerald became complicit in enabling and covering up

Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature of Plaintiff.

68.     Defendant Addison's HRD, including Ms. Tien, victimized Plaintiff when Plaintiff reported Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature of Plaintiff.

69.     Defendant Addison's HRD, including Ms. Tien, failed to prevent Defendant Fitzgerald's retaliation of Plaintiff.

70.     Defendant Addison's HRD, including Ms. Tien, became complicit and enabled Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature of Plaintiff.

71.     Defendant Addison's HRD, including Ms. Tien, engaged in a course of conduct that would cause, and did cause, Plaintiff to be constructively discharged as Defendant Addison's employee.

72.     Defendant Addison's HRD, including Ms. Tien, having actual and constructive knowledge of Defendant Fitzgerald's misuse of his corporate email account and cellular telephone failed to take proper action against Defendant Fitzgerald.

73.     Defendant Addison was complicit with Defendant Fitzgerald by failing to terminate Defendant Fitzgerald's access to Defendant Addison's computer server and cellular telephone used by Defendant Fitzgerald as part of his predatory conduct to Plaintiff.

74.     Defendant Addison's HRD, including Ms. Tien, acted with Defendant Fitzgerald engaging in a course of conduct that would cause, and did cause, Plaintiff to be constructively discharged as a Defendant Addison employee.

## DEFENDANT FITZGERALD'S RETALIATORY CONDUCT AGAINST PLAINTIFF FOR NOTIFYING DEFENDANT ADDISON'S HRD

75.     After Plaintiff reported Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature to Ms. Tien on January 3, 2018, Defendant Fitzgerald completed Plaintiff's employee performance evaluation ("evaluation").  (Exhibit P).

76.     Plaintiff's January 3, 2018, evaluation:

> "…While (Plaintiff) has had some development and has gained knowledge of our industry and situations that take place daily, (Plaintiff) has a "NI" (Needs Improvement) rank in nearly each category based on my assessment..."

77.     According to Plaintiff's evaluation, "NI" is the lowest evaluation possible, defined as, Plaintiff "Did not achieve stated results, work wasn't completed in a timely/quality manner."  (Exhibit P).

78.     On January 3, 2018, after Plaintiff reported to Ms. Tien Defendant Fitzgerald's comment regarding how Plaintiff dressed, Defendant Fitzgerald stated in Plaintiff's evaluation: (Exhibit P).

> "In 2017, we also addressed (Plaintiff's) attire in the office.  Once addressed, (Plaintiff) has made an effort to dress more professionally in the office.  HR/Admin clients and candidates tend to be more conservative professionals and dressing accordingly is critical."

79.     On January 19, 2018, Defendant Fitzgerald met with Plaintiff concerning Plaintiff's evaluation.

80.     Defendant Fitzgerald directed Plaintiff to sign the January 3, 2018, evaluation. (Exhibit P).

81.     Plaintiff signed the January 3, 2018, evaluation. (Exhibit P).

82.     Plaintiff believed there was no choice but to sign Defendant Fitzgerald's evaluation of Plaintiff's performance. (Exhibit P).

83.     Defendant Fitzgerald's retaliatory evaluation of Plaintiff is part of Plaintiff's Defendant Addison's employment file.  (Exhibit P).

84.     Prior to Plaintiff reporting Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature to Ms. Tien, Defendant Fitzgerald previously evaluated Plaintiff's work performance on September 30, 2017, at 11:32 a.m.:

> "I think you are a unique person with a lot of interesting gifts…&
> talents which is why I hired you and why we are texting right now.
> Success in business is hopefully one of many accomplishments for
> you…and many others are out there too."  (Exhibits B & N).

85.     After Plaintiff reported Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature to Ms. Tien on or about November 10, 13 and 15, 2017, Defendant Fitzgerald became more intrusive and critical of Plaintiff's work performance.  (Exhibits N and Y).

86.     During November 2017 until April 18, 2018, Defendant Fitzgerald repeatedly told Plaintiff that "she was not doing enough" and that Plaintiff, "needed to improve" her work performance.

87.     Defendant Fitzgerald's criticism of Plaintiff occurred in the presence of other Defendant Addison's employees.

88.     In furtherance of Defendant Fitzgerald's predatory conduct, Defendant Fitzgerald, with no Defendant Addison business purpose, contacted Plaintiff on weekends and after work hours concerning Plaintiff's work performance.  (Exhibits A, B, E, F and G-J).

89.     On March 8, 2018, Defendant Fitzgerald e-mailed Plaintiff, "I need to charge Monday against your PTO hours."[3]  (Exhibit Q).

90.     On March 29, 2018, Plaintiff responded to Defendant Fitzgerald's March 8, 2018, email, "You send me this (March 8, 2018) e-mail and we actually sat down and talked about it.

---

[3]     "PTO" refers to "paid time off".

Like I said, I understand if I won't get paid for those three days but this is just a lot of confusion

for me. It's like one thing is said and then a few days later, it's as if we never addressed this."

(Exhibit Q).

91.    On or about April 3, 2018, Defendant Fitzgerald selected two Defendant Addison

employees to receive a bonus for developing clients.

92.    These bonuses were given to other Defendant Addison's employees instead of

Plaintiff who developed a Defendant Addison client.

93.    On April 5, 2018, at 11:47 a.m., Defendant Fitzgerald sent Plaintiff an e-mail with

the subject "cell phone."  (Exhibit Q).

> "As mentioned numerous times now, cell phone is off the desk
> during call blocks."

94.    On April 5, 2018, at 11:47 a.m., Plaintiff responded:

> "I wasn't even using my phone" and Defendant Fitzgerald's
> response was "I didn't say you were using the phone, but it was
> right in front of you, next to your key-board. One text and
> distractions can begin…."  (Exhibit Q).

95.    On April 10, 2018, at 5:34 a.m., Plaintiff emailed Defendant Fitzgerald, "Hi Ted,

I have food poisoning and it seems like I will be out of the office today. Thank you."  (Exhibit

Q).

96.    On April 10, 2018, at 6:28 a.m., Defendant Fitzgerald responded, "Catherine,

Hopefully it's not really food poisoning. Try to make it in if you can as you need to hit your

activity goals and have exhausted your PTO by several days already."  (Exhibit Q).

97.    After Plaintiff e-mailed Defendant Fitzgerald on April 10, 2018, that Plaintiff

would be out sick, Ms. Tien sent an e-mail to Plaintiff on April 18, 2018, at 4:15 p.m. stating that

Plaintiff had to provide advance notice for absences.

98.    On April 12, 2018, at 4:21 p.m., Defendant Fitzgerald sent Plaintiff an email,

"where are you?"  (Exhibit Q).

"Catherine, You have been missing from your desk for a while.
Where are you?"

## PLAINTIFF'S DEFENDANT ADDISION RESIGNATION

99. On April 18, 2018, Plaintiff, having no choice, resigned from Defendant Addison.

"I've come to this decision after reflecting on series of
uncomfortable events that transpired with my employment at
Addison Group.

Following my sexual harassment complaint, I feel I have been
unheard, isolated and discriminated against which resulted in an
unhealthy work environment that made it impossible for me to
thrive.

Please accept my resignation effective immediately."  (Exhibit R).

100. Plaintiff's coerced resignation from Defendant Addison was caused by Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature of Plaintiff.

101. Plaintiff's coerced resignation from Defendant Addison was caused by Defendant Addison's HRD, including Ms. Tien, by not protecting Plaintiff from Defendant Fitzgerald's misconduct.

102. Defendant Fitzgerald's retaliation also caused Plaintiff's constructive termination of Plaintiff's Defendant Addison's employment.

103. Defendant Addison's HRD, including Ms. Tien, were complicit in causing Plaintiff's constructive termination of Plaintiff's Defendant Addison's employment.

104. After Plaintiff resigned from Defendant Addison, Plaintiff was only able to find part time employment causing a decrease in Plaintiff's income.

**DEFENDANT ADDISON'S HISTORY OF SIMILAR
MISCONDUCT PERMITTING A DISCRIMINATORY
HOSTILE WORK ENVIRONMENT WHICH WAS AND IS
CONDONED AND ENABLED BY DEFENDANT ADDISON**

105.    According to reviews on Glassdoor.com, a website where current and former employees post their job experiences, only 9% recommended working at Defendant Addison's New York Office.  (Exhibit S).

106.    For instance, a November 11, 2013, Glassdoor.com posting by a former Defendant Addison's employee from the New York Office described Defendant Addison's workplace as an, "Old Boys Club In The Worst Way," demonstrating similar misconduct that Plaintiff encountered:

> "As with most staffing agencies there isn't an HR department to talk to when issues arise.  I hope that office has gotten better since I was there but the environment was miserable. Every day was filled with racist, sexist, and homophobic comments.  If you did not fit the "fratboy" mold you were not accepted."  (Exhibit S).

107.    A July 15, 2014, Glassdoor.com post by a former Defendant Addison employee-recruiter in the New York Office entitled, "Terrible":

> "Employee morale is terrible. I spent six weeks there and the Recruiters were leaving like rats off a sinking ship….Not only were former employees speaking horribly, of this organization, but CURRENT employees would also tell me how much they hated the place."  (Exhibit S).

108.    A December 10, 2017, Glassdoor.com post by a former Defendant Addison employee-recruiter in the New York Office entitled, "Awful Place to Work":

> **Pros:**  Literally none. The people here were dimwits, honestly didn't seem like they had a college education. The managers literally lie to everyone (re: Clients, Candidates) etc. Basically any op someone has to lie here they will.
>
> **Cons:**  I honestly can't think of any. The location is the worst part of NYC. Even the receptionist is incompetent and the managers act think they are crushing it but are just pathetic bridge and tunnel people with substance problems." (Exhibit S).

109.    When Plaintiff complained about Defendant Fitzgerald's outrageous and unwelcome, harassing and predatory conduct of a sexual nature, Ms. Tien knew or should have known from these Glassdoor posts that serious discriminatory conduct and employee work related problems existed at Defendant Addison's New York Office, described as "racist", "sexist" and Defendant Addison having "terrible morale." (Exhibit S).

110.    On December 13, 2017, Ms. Tien posted a response on Glassdoor.com to the December 10, 2017, an "Awful Place to Work" post:

> "Addison Group Response:
>
> December 13, 2017 – Director of HR
>
> We appreciate you taking the time to leave a review. We take feedback to heart and use it to improve when possible. We'd love to hear specific feedback from your experience and what we can do to improve. Please email us at HR@addisongroup.com."
> (Exhibit S).

111.    A January 23, 2020, Glassdoor.com post by a current Defendant Addison employee-recruiter in the New York Office stated:

> "Dept. heads do nothing when you complain about the way you are treated or spoken to…. Matter of fact, if you make a complaint against these malicious pot-stirrers, you will lose in the end. Advice to Management, listen to your employees and open your eyes to see how employees are treating their coworkers."

112.    Evidently, Defendant Addison's violation of its own Handbook and Policy regarding inappropriate sexual conduct, discriminatory conduct, maintaining a hostile work environment and permitting retaliation experienced by Plaintiff, is a pervasive problem at Defendant Addison's New York Office.

113.    The hostile workplace environment at Defendant Addison's New York Office no doubt continues, warranting judicial oversight.

**PLAINTIFF SUSTAINED SERIOUS INJURIESAND
ECONOMIC LOSS CAUSED BY DEFENDANTS
SEEKING COMPENSATORY AND PUNITIVE DAMAGES**

114.    As a result of the above acts and omissions of Defendants, Plaintiff suffered and continues to suffer from severe emotional distress, stress, mental anguish, humiliation, anxiety, harm to her reputation, loss of pay, an interruption derailment of her career, denial of job opportunities and other valuable benefits and emoluments of employment, education expenses, loss of economic opportunities, and is required to expend sums for therapy and other medical expenses.

115.    Plaintiff is seeking compensatory and punitive damages against Defendants.

**NEW YORK STATE'S DIVISION OF HUMAN RIGHTS
ISSUES A PROBABLE CAUSE DECISION FINDING
DEFENDANTS ENGAGED IN EMPLOYMENT
DISCRIMINATION BECAUSE OF SEX, OPPOSED
DISCRIMINATION/RETALIATION IN VIOLATION OF
NEW YORK STATE'S *HUMAN RIGHTS LAW***

116.    On June 19, 2018, Plaintiff filed a Verified Complaint ("Complaint") with the New York State Division of Human Rights ("SDHR") charging Defendants ("Respondents") with unlawful discriminatory practices relating to employment because of sex, opposed discrimination/retaliation in violation of New York State's *Executive Law,* Article 15 ("*Human Rights Law*").  (Exhibit T).[4]

117.    SDHR investigated Plaintiff's Complaint and reviewed the text messages between Defendant Fitzgerald and Plaintiff.   (Exhibits A-J, N).

118.    At SDHR Respondents were represented by counsel.

---

[4]    Attached is the November 5, 2018, letter from Joyce Yearwood-Drury, SDHR, Director, Office of Sexual Harassment Issues acknowledging receipt of Plaintiff's Complaint and dual filing with the U.S. Equal Employment Opportunity Commission ("EEOC").  (Exhibit T).

119.    Respondents made admissions to the allegations in Plaintiff's Complaint.

120.    In Respondents' Answer dated November 27, 2018, Respondents admitted Plaintiff's Allegation Paragraphs 5, 7, 8, 9 and 13-16 concerning Respondent Fitzgerald's outrageous, unwelcome, harassing and predatory conduct of a sexual nature that Plaintiff suffered.  (Exhibit U).

121.    In Plaintiff's Complaint Paragraph 14, Respondents admitted sending Plaintiff unprofessional text messages in late September 2017, commenting on Plaintiff's body.

122.    Respondents further admitted to including in those texts:  (Exhibit U).

123.    On September 29, 2017, establishing one of Plaintiff's work goals to be, "admission of tiger tattoo location."

124.    On September 30, 2017, "You are definitely an interesting *site* in a bikini."

125.    In Plaintiff's Complaint Paragraph 14, Respondents admitted Defendant Fitzgerald sending a modeling picture of him when he was younger and nude except for a small cloth covering Defendant Fitzgerald's genitals.  (Exhibit U).

126.    Respondents also falsely asserted in its Affirmative Defense that Plaintiff failed to take advantage of Respondent's (Defendant Addison's) anti-harassment and reporting procedures.  (Exhibit U).

127.    Respondents' denial is contrary to the truth since, as set forth above, Plaintiff reported Defendant Fitzgerald's predatory misconduct to Defendant Addison's HRD, including Ms. Tien.

128.    On May 13, 2019, Joyce Yearwood-Drury, SDHR, Director, Office of Sexual Harassment Issues, issued a Determination After Investigation.

129.    The Determination After Investigation found that Probable Cause existed, that Respondents "engaged in or are engaging in the unlawful discriminatory practice (Plaintiff) complained of".  (Exhibit V).

130. On October 31, 2019, at Plaintiff's request, prior to hearing and pursuant to New York State's *Human Rights Law*, § 297.9, Angela Fernandez, SDHR, Commissioner, issued a Notice and Final Order ("Final Order") adopting the Recommended Order of Annulment of Election of Remedies of Martin Erazo, Jr. SDHR, Administrative Law Judge, dismissing Plaintiff's Complaint and annulling the election of remedies permitting Plaintiff to file a lawsuit against Defendants in this Court.  (Exhibit W).

131. The Final Order required Defendants had sixty (60) days from October 31, 2019, to appeal SDHR's Final Order to the New York State Supreme Court.

132. Defendants did not file an appeal of the Final Order as SDHR required.

133. EEOC was notified by SDHR that the matter was dismissed.

134. On February 11, 2020, EEOC closed its file, "Charging party (Plaintiff) wishes to pursue matter in court."  (Exhibit W).

**AS AND FOR A FIRST CAUSE OF ACTION
AGAINST DEFENDANT FITZGERALD
(Gender Discrimination and Unwelcome, Harassing
and Predatory Conduct of a Sexual Nature, Discriminatory
and Abusive Conduct)**

135. Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "134" as if fully set forth at length herein.

New York State's *Executive Law* § 296(1)(a) mandates that:

"It shall be an unlawful discriminatory practice…[f]or an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex … to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

136. Plaintiff is a woman and member of a protected class under New York State's *Executive Law* § 296(1)(a) and *Title 8,* New York City's *Administrative Code*, § 8-107 (New York City's *Human Rights Law*).

137.    Defendant Addison employs more than 1000 employees.

138.    Defendant Addison is subject to New York State's and New York City's *Human Rights Laws*.

139.    During Plaintiff's Defendant Addison's employment, Defendant Fitzgerald as Defendant Addison's Senior Vice President in the New York Office had the power to make personnel decisions, such as, to hire, manage, control, review and participate in the employment and termination of Defendant Addison's employees, including Plaintiff.

140.    Defendant Fitzgerald is required to comply with the provisions of all federal, New York State and New York City laws.

141.    Plaintiff was discriminated against and subjected to unwelcome, harassing and predatory conduct of a sexual nature.

142.    Plaintiff's discrimination and Plaintiff being subjected to Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature were due to Plaintiff's gender as a female.

143.    Plaintiff was discriminated against by Defendant Fitzgerald.

144.    Plaintiff was treated differently than Defendant Addison's male employees.

145.    Defendant Fitzgerald discriminated against Plaintiff negatively effecting Plaintiff's Defendant Addison's employment on the basis of her female gender in violation of the New York State's *Human Rights Law* and *Executive Law* § 296(1)(a), subjecting Plaintiff to disparate treatment based upon Plaintiff's gender.

146.    In violation of the New York State's *Human Rights Law* and other relevant statutes, Defendant Fitzgerald retaliated against Plaintiff for Plaintiff reporting Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature to Defendant Addison's HRD.

147.    Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature were severe and pervasive, denying Plaintiff's employment with Defendant Addison in violation of all relevant federal, New York State and City laws.

148.    Defendant Fitzgerald created an abusive work environment in Defendant Addison's New York Office in violation of the New York State's *Human Rights Law* and all other relevant laws.

149.    Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature unlawfully interfered with Plaintiff's work performance which created an intimidating, hostile, and offensive work environment in Defendant Addison's New York Office.

150.    As a direct and proximate result of Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature, discriminatory and abusive conduct, Plaintiff suffered adverse employment consequences and personal injuries.

151.    As a direct and proximate result of Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature, discriminatory and abusive conduct, Plaintiff suffered a constructive termination of Plaintiff's Defendant Addison's position, loss of salary, bonus, job opportunities and other valuable benefits and emoluments which is part of Defendant Addison's employment.

152.    As a direct and proximate result of Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature, discriminatory and abusive conduct, Plaintiff suffered severe mental anguish, severe emotional distress, humiliation, anxiety, stress-induced illness, headaches, irreparable harm to Plaintiff's reputation, therapy, acupuncture and medically related expenses.

153.    Defendant Fitzgerald's conduct was willful and motivated by malice recklessness and/or indifference to Plaintiff's protected legal rights.

154.     Punitive damages must be awarded since Defendant Fitzgerald's conduct amounted to willful or wanton negligence and/or recklessness, exhibiting a conscious disregard of Plaintiff's lawfully protected rights.

155.     By reason of the foregoing, Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court for compensatory and punitive damages.

### AS AND FOR A SECOND CAUSE OF ACTION
### AGAINST DEFENDANT FITZGERALD
### (Gender Discrimination and Unwelcome, Harassing and Predatory
### Conduct of a Sexual Nature, Discriminatory and Abusive Conduct)

156.     Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "155" as if fully set forth at length herein.

157.     New York City's *Administrative Code* § 8-107(1)(a) states:

> "It shall be an unlawful discriminatory practice…[f]or an employer or an employee or agent thereof, because of the actual or perceived ... gender... to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

158.     Defendant Fitzgerald violated New York City's *Administrative Code* § 8-107(1)(a) by Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature which unlawfully interfered with Plaintiff's work performance at Defendant Addison's New York Office.

159.     Defendant Fitzgerald created an intimidating, hostile and offensive workplace in Defendant Addison's New York Office.

160.     By reason of the foregoing, Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court for compensatory and punitive damages.

## AS AND FOR A THIRD CAUSE OF ACTION
## AGAINST DEFENDANT FITZGERALD
### (Retaliation)

161.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "160" as if fully set forth at length herein.

162.    New York City's *Administrative Code* § 8-107(7) states that:

> "It shall be an unlawful discriminatory practice…[f]or any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has…opposed any practice forbidden under this chapter.…The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment…provided, however, that the retaliatory or discriminatory act or acts complained of must be reasonably likely to deter a person from engaging in protected activity."

163.    Defendant Fitzgerald violated New York City's *Administrative Code* § 8-107(7).

164.    Defendant Fitzgerald engaged in unwelcome, harassing and predatory conduct of a sexual nature which unlawfully interfered with Plaintiff's work performance creating an intimidating, hostile and offensive workplace in Defendant Addison's New York Office.

165.    Plaintiff engaged in a protected activity by complaining to Defendant Addison's HRD, managers and employees about Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature which unlawfully interfered with Plaintiff's workplace performance.

166.    Defendant Fitzgerald's retaliatory tactics were calculated to deter Plaintiff from lawfully resisting Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature.

167.    Defendant Fitzgerald sent Plaintiff a chilling message to stop complaining about Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature.

26

168.    Defendant Fitzgerald prepared a retaliatory evaluation of Plaintiff's work performance after Plaintiff informed Defendant Addison's HRD of Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature.  (Exhibit P).

169.    By reason of the foregoing, Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court for compensatory and punitive damages.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**AGAINST DEFENDANT FITZGERALD**
**(Retaliation)**

170.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "169" as if fully set forth at length herein.

171.    New York State's *Executive Law* § 296(7) states that:

> "It shall be an unlawful discriminatory practice…[f]or any person engaged in any activity to which this chapter applies to retaliate or discriminate against any person because he or she person has opposed any practice forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article."

172.    Defendant Fitzgerald violated New York State's *Executive Law* § 296(7) by Defendant Fitzgerald's retaliation against Plaintiff after notifying Defendant Addison's HRD of Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature.

173.    By reason of the foregoing, Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court for compensatory and punitive damages.

**AS AND FOR AN FIFTH CAUSE OF ACTION**
**AGAINST DEFENDANT FITZERALD**
**(Negligence)**

174.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "173" as if fully set forth at length herein.

175.     Defendant Fitzgerald had a duty to protect Plaintiff and other Defendant Addison's employees from predatory conduct, sexual misconduct, harassment, a hostile work environment, retaliation.

176.     Defendant Fitzgerald was and is required to comply with New York State's *Executive Law*, New York State's and City's *Human Rights Law*s and all other laws, statutes, rules and regulations.

177.     Defendant Fitzgerald negligently failed to do so.

178.     Defendant Fitzgerald's actions breached a duty he had to Plaintiff in accordance with laws, statutes, rules and regulations.

179.     Defendant Fitzgerald was negligent and careless causing Plaintiff severe emotional distress and/or mental trauma, as well as, other damages.

180.     By reason of the foregoing, Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court for compensatory and punitive damages.

### AS AND FOR AN SIXTH CAUSE OF ACTION
### AGAINST DEFENDANT FITZGERALD
### (Negligent Infliction of Emotional Distress)

181.     Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "180" as if fully set forth at length herein.

182.     Over several months, Defendant Fitzgerald engaged in unwelcome, harassing and predatory conduct of a sexual nature of Plaintiff, including sending Plaintiff text messages, despite Plaintiff making clear that such messages were unwelcome, going through Plaintiff's intimate clothing in Plaintiff's bag under her desk, sending Plaintiff flowers and a half nude picture of Defendant Fitzgerald while demanding photos of Plaintiff's body.  (Exhibits A-J and N).

183.    Due to Defendant Fitzgerald's unwelcome, harassing and predatory conduct of a sexual nature which created an abusive and hostile workplace, Plaintiff suffered and continues to suffer, severe emotional distress due.

184.    Defendant Fitzgerald negligently inflicted emotional distress to Plaintiff.

185.    By reason of the foregoing, Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court for compensatory and punitive damages.

**AS AND FOR A SEVENTH CAUSE OF ACTION**
**AGAINST DEFENDANT ADDISON**
**(Gender Discrimination and Sexual Harassment)**

186.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "185" as if fully set forth at length herein.

187.    Defendant Fitzgerald's retaliatory actions were coordinated with Defendant Addison's HRD and management in violation of New York State's *Executive Law* and relevant New York City law.

188.    Defendant Addison was complicit with Defendant Fitzgerald and other Defendant Addison supervisors engaging in a pattern and unlawful practice against Defendant Addison's employees, such as Plaintiff, who reported misconduct, discrimination, harassment and retaliation by Defendant Addison's supervisors.

189.    New York State's *Executive Law* § 296(1)(a) states that:

> "It shall be an unlawful discriminatory practice…[f]or an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, gender identity or expression, military status, sex … to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

190.    Defendant Addison's Ms. Tien and Mr. Kavanagh had supervisory and managerial control over Defendant Addison's employees including Plaintiff.

191.    Ms. Tien and Mr. Kavanagh discriminated against Plaintiff concerning the terms and conditions of Plaintiff's employment on the basis of her gender in violation of New York State's *Executive Law* the New York State's *Human Rights Law* and other relevant laws by subjecting Plaintiff to disparate treatment based upon her gender.

192.    Plaintiff's discrimination was severe and pervasive, altering the conditions of Plaintiff's Defendant Addison's employment which created an abusive work environment in Defendant Addison's New York Office.

193.    Defendant Addison, as Defendant Fitzgerald's employer, is vicariously liable for Defendant Fitzgerald's acts and omissions.

194.    Defendant Addison is vicariously liable for the acts and omissions of its supervisors and managers, including but not limited to, Defendant Fitzgerald, Mr. Kavanagh and Ms. Tien occurring during the course of their Defendant Addison's employment.

195.    Defendant Addison violated New York State's *Executive Law* § 296(1)(a).

196.    By reason of the foregoing, Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court for compensatory and punitive damages.

**AS AND FOR AN EIGHTH CAUSE OF ACTION
AGAINST DEFENDANT ADDISON GROUP
(Gender Discrimination and Sexual Harassment)**

197.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "196" as if fully set forth at length herein.

198.    New York City's *Administrative Code* § 8-107(1)(a) states that:

> "It shall be an unlawful discriminatory practice…[f]or an employer or an employee or agent thereof, because of the actual or perceived ... gender... to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

199.    Defendant Addison's vicarious liability is governed pursuant New York State's

*Executive Law* and New York City's *Administrative Code* § 8-107(13) that states:

> "An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of [N.Y.C. *Admin. Code* §§ 8-107(1) or (2)] only where:
>
> (1)     The employee or agent exercised managerial or supervisory responsibility; or
>
> (2)     The employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or
>
> (3)     The employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct."

200.    Defendant Addison violated New York City's *Administrative Code* §§ 8-107(1)(2).

201.    By reason of the foregoing, Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court for compensatory and punitive damages.

## AS AND FOR A NINTH CAUSE OF ACTION
## AGAINST DEFENDANT ADDISON
### (Retaliation)

202.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "201" as if fully set forth at length herein.

203.    New York City's *Administrative Code* § 8-107(7) states that:

> "It shall be an unlawful discriminatory practice…[f]or any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has…opposed any practice forbidden under this chapter.…The retaliation or discrimination complained of under this subdivision need not result in an ultimate action with respect to employment…provided, however, that the retaliatory or

discriminatory act or acts complained of must be reasonably likely
to deter a person from engaging in protected activity."

204.    During the course of Plaintiff's employment, Defendant Addison violated New

York City's *Administrative Code* § 8-107(7).

205.    By reason of the foregoing, Plaintiff has been damaged in an amount in excess of

the jurisdictional limits of this Court for compensatory and punitive damages.

## AS AND FOR A TENTH CAUSE OF ACTION
## AGAINST DEFENDANT ADDISON
### (Retaliation)

206.    Plaintiff repeats, reiterates and realleges each and every allegation contained in

Paragraphs "1" through "205" as if fully set forth at length herein.

207.    New York State's *Executive Law* § 296(7) states that:

"It shall be an unlawful discriminatory practice…[f]or any person
engaged in any activity to which this chapter applies to retaliate or
discriminate against any person because he or she person has
opposed any practice forbidden under this article or because he or
she has filed a complaint, testified or assisted in any proceeding
under this article."

208.    During the course of Plaintiff's employment, Defendant Addison violated New

York State's *Executive Law* § 296(7)*.

209.    By reason of the foregoing, Plaintiff has been damaged in an amount in excess of

the jurisdictional limits of this Court for compensatory and punitive damages.

## AS AND FOR A ELEVENTH CAUSE OF ACTION
## AGAINST DEFENDANT ADDISON
### (Aiding and Abetting Gender Discrimination and Retaliation)

210.    Plaintiff repeats, reiterates and realleges each and every allegation contained in

Paragraphs "1" through "209" as if fully set forth at length herein.

211.    Pursuant to New York City's *Administrative Code* § 8-107(6) it is, "an unlawful

discriminatory practice…[f]or any person to aid, abet, incite, compel or coerce the doing of any

of the acts forbidden under this article, or attempt to do so."

212.    Defendant Addison's employees Defendant Fitzgerald, Ms. Tien, Mr. Kavanagh and other supervisors and managers of Defendant Addison were complicit, aided and abetted the gender discrimination, harassment and retaliation against Plaintiff.

213.    Defendant Addison's employees Defendant Fitzgerald, Ms. Tien, Mr. Kavanagh and other supervisors and managers of Defendant Addison were complicit, aided and abetted in the attempt to compel and coerce Plaintiff to take responsibility for Defendant Fitzgerald's misconduct.

214.    Defendant Addison's employees Defendant Fitzgerald, Ms. Tien, Mr. Kavanagh and other supervisors and managers of Defendant Addison were complicit, aided, abetted and coordinated their efforts against Plaintiff resulting in Plaintiff's constructive termination.

215.     Defendants violated New York City's *Administrative Code* § 8-107(6).

216.    By reason of the foregoing, Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court for compensatory and punitive damages.

**AS AND FOR A TWELFTH CAUSE OF ACTION
AGAINST DEFENDANT ADDISON
(Aiding and Abetting Gender Discrimination and Retaliation)**

217.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "216" as if fully set forth at length herein.

218.    Pursuant to New York State's *Executive Law* § 296(6) it is, "an unlawful discriminatory practice…[f]or any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so."

219.    During the course of Plaintiff's employment, Defendant Addison violated New York State's *Executive Law* § 296(6) § 296(6).

220.    By reason of the foregoing, Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court for compensatory and punitive damages.

## AS AND FOR AN THIRTEENTH CAUSE OF ACTION
## AGAINST DEFENDANT ADDISON
### (Negligence)

221.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "220" as if fully set forth at length herein.

222.    Defendant Addison's employees, Defendant Fitzgerald, Ms. Tien and Mr. Kavanagh, as supervisors and employees, had a duty to protect Plaintiff from a Defendant Addison's supervisor's predatory sexual misconduct, from creating a hostile workplace and retaliation.

223.    Defendant Addison's employees, Defendant Fitzgerald, Ms. Tien and Mr. Kavanagh, as supervisors and employees, had a duty to comply with New York State's and New York City's *Human Rights Law* and all other laws, statutes, rules and regulations.

224.    Defendant Addison breached its duty to Plaintiff.

225.    Due to Defendant Fitzgerald's, Ms. Tien's, Mr. Kavanagh's and other supervisors' aforementioned negligent acts and omissions during the course of her employment, Plaintiff has suffered and continues to suffer, severe emotional distress and economic consequences.

226.    Defendant Addison failed to safeguard, monitor, control and terminate Defendant Fitzgerald's access to Defendant Addison's computer server and corporate cellular telephone.

227.    Defendant Addison's failure was another breach of duty owed to Plaintiff by Defendant Addison.

228.    Defendant Addison negligently contributed to and caused Defendant Fitzgerald's predatory conduct of Plaintiff resulting in Plaintiff being damaged.

229.    By reason of the foregoing, Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court for compensatory and punitive damages.

## AS AND FOR AN FOURTEENTH CAUSE OF ACTION
## AGAINST DEFENDANT ADDISON
### (Negligent Employment Retention)

230.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "229" as if fully set forth at length herein.

231.    That Defendant Addison employed Defendant Fitzgerald, Ms. Tien and Mr. Kavanagh.

232.    Defendant Addison is vicariously responsible for Defendant Fitzgerald's, Ms. Tien's and Mr. Kavanagh's and all other employees' acts committed during and within the scope of their Defendant Addison employment.

233.    Defendant Addison hired and continued to employ Defendant Fitzgerald having knowledge or should have had knowledge of Defendant Fitzgerald's past and present predatory sexual misconduct not only to Plaintiff but others.

234.    Defendant Addison is vicariously responsible for Defendant Fitzgerald's, Ms. Tien's, Mr. Kavanagh's and all other Defendant Addison's employees who created and continued a hostile workplace for Plaintiff and other Defendant Addison employees.

235.    Defendant Addison is vicariously responsible for Defendant Fitzgerald's, Ms. Tien's, Mr. Kavanagh's and all other Defendant Addison's employees who engage in a course of discrimination and retaliation against Plaintiff and all other Defendant Addison employees.

236.    Defendant Addison continued to employ Defendant Fitzgerald, Ms. Tien and Mr. Kavanagh after they engaged in, knew or should have known about the violative workplace conditions in the New York Office which they maintained at the New York Office.

237.    Defendant Addison continued to employ Defendant Fitzgerald, Ms. Tien and Mr. Kavanagh after they engaged in, knew or should have known about the violative workplace conditions in the New York Office.

238.    Defendant Addison continued to employ Defendant Fitzgerald, Ms. Tien and Mr. Kavanagh after Ms. Tien and Mr. Kavanagh failed to enforce Defendant Addison's Policies against Defendant Fitzgerald.

239.    Defendant Addison continued to employ Defendant Fitzgerald, Ms. Tien and Mr. Kavanagh who committed, permitted, condoned, were complicit, aided and abetted predatory misconduct, discriminatory acts and retaliation Plaintiff was subjected to at Defendant Addison's New York Office.

240.    By reason of the foregoing, Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court for compensatory and punitive damages.

## AS AND FOR A FIFTEENTH CAUSE OF ACTION
## AGAINST DEFENDANTS
### (Aiding and Abetting Gender Discrimination and Retaliation)

241.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "240" as if fully set forth at length herein.

242.    New York City's *Administrative Code* § 8-107(6) states, it is "an unlawful discriminatory practice…[f]or any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so."

243.    Defendants were complicit with each other, aided and abetted the gender discrimination and retaliation of Plaintiff.

244.    Defendants were complicit with each other, aided and abetted each other in violation of all relevant laws.

245.    Defendants, during Plaintiff's employment, discouraged Plaintiff's reporting of Defendant Fitzgerald's predatory conduct, discrimination, retaliation which created a hostile workplace in the New York Office.

246.    Defendants failed to prevent or stop Defendant Fitzgerald's predatory conduct, harassment, discrimination, retaliation which created a hostile workplace in the New York Office.

247.    Defendants fostered an environment making it uncomfortable for a woman, such as Plaintiff, to report Defendant Fitzgerald's predatory conduct to Defendant Addison's HRD.

248.    Defendants, throughout Plaintiff's employment, had a continuous practice or policy of intimidating and/or ignoring Defendant Addison's employees' complaints that Defendant Addison's employees were subjected to Defendant Addison's supervisors' misconduct, sexual harassment or other acts of discrimination in the workplace.

249.    Defendants have violated New York City's *Administrative Code* § 8-107(6).

250.    By reason of the foregoing, Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court for compensatory and punitive damages.

## AS AND FOR A SIXTEENTH CAUSE OF ACTION
## AGAINST DEFENDANTS
### (Aiding and Abetting Gender Discrimination and Retaliation)

251.    Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "250" as if fully set forth at length herein.

252.    Pursuant to New York State's *Executive Law* § 296(6) it is, "an unlawful discriminatory practice…[f]or any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so."

253.    Defendants aided and abetted each other and were complicit concerning the gender discrimination and retaliation of Plaintiff for reporting Defendant Fitzgerald's predatory conduct to Defendant Addison's HRD.

254.    Defendants have violated New York State's *Executive Law* § 296(6).

255.    By reason of the foregoing, Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court for compensatory and punitive damages.

## AS AND FOR A SEVENTEENTH CAUSE OF ACTION
## AGAINST DEFENDANT ODYSSEY

256.   Plaintiff repeats, reiterates and realleges each and every allegation contained in Paragraphs "1" through "255" as if fully set forth at length herein.

257.   Defendant Odyssey as a controlling entity, *respondeat superior*, of all other Defendants and is responsible for the acts and omissions and violations of federal, State and City law committed by Defendant Addison and Defendant Addison's employees, including Defendant Fitzgerald to Plaintiff's detriment.

258.   By reason of the foregoing, Plaintiff has been damaged in an amount in excess of the jurisdictional limits of this Court for compensatory and punitive damages.

## ATTORNEYS' FEES, EXPENSES AND COSTS

259.   In order to enforce Plaintiff's rights against Defendants, Plaintiff has retained counsel and is entitled to recover attorneys' fees, expenses and costs pursuant to New York City's *Human Rights Law* and New York State's *Human Rights Law* in addition to any other legal fees Plaintiff's counsel is entitled.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court enter a judgment against Defendants, jointly and severally, in favor of Plaintiff for all Causes of Action as set forth above and also seeks the following against Defendants:

A.   A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violated the laws of the United States, State and City of New York;

B.   An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate Plaintiff for all monetary and/or economic damages;

C.      An award of damages against Defendants, in an amount to be determined at trial, plus interest, to compensate for all non-monetary and/or compensatory damages, including, but not limited to, compensation for Plaintiff's severe mental anguish, severe emotional distress, humiliation, anxiety, and stress-induced illness.

D.      An award of punitive damages in an amount to be determined at trial;

E.      Prejudgment interest on all amounts due;

F.      Award Plaintiff such additional and further relief, at law or in equity as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury as to all claims for monetary damages.


Dated:    September 9, 2020                         By:  **S/ Arnold N. Kriss, Esq.**

**ARNOLD N. KRISS, ESQ. (5294)**
**JOHN C. THEODORELLIS, ESQ.(6140)**
**LAW OFFICES OF ARNOLD N. KRISS**
Attorney(s) for Plaintiff
123 William Street, 15th Floor
New York, New York 10038
(212) 577-2000